## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

ELGIE L. LONG, SR., et al.,        )
                                           )
        Plaintiffs,           )
                                           )
        v.                    )     Case No. 01-1111-CV-W-HFS
                                           )
CROSS REPORTING SERVICE, INC.,   )
et al.,                             )
                                           )
        Defendants.        )

## MEMORANDUM AND ORDER

       This ruling will grant a recent motion for summary judgment (Doc. 112) filed by a law firm and lawyer (Ms. Walsh and Franke & Schultz, P.C.) and their client, a funeral home (Funeral Directors Service, Inc.), in long-pending Federal litigation that relates back to Missouri State Court controversies originating in 1997. Processing of this case was delayed several years after it disappeared from computer records of old cases. When rediscovered last year I mistakenly thought it had been abandoned.

       Plaintiffs here are Mr. Moore, plaintiffs' attorney in the original litigation, and the parents and brother (the Long family), whose son and brother was buried by the funeral home. The Long family complain of mishandling of the body and the loss of a Rolex watch. The State Court controversy became heated and probably emotional during discovery and consideration of anticipated trial proof relating to the decedent's medical history. After much bickering and unsuccessful attempts to obtain appellate court guidance, this lawsuit was filed. Simultaneously, in October, 2001, trial had been scheduled and a jury was available. When Mr. Moore failed to appear and could not be located, the suit against the funeral home people was dismissed with

prejudice.[1]

A second State Court suit was filed against the Missouri judge and others, apparently centering on alleged misconduct relating to medical record rulings. Ultimately that case was dismissed without prejudice and was not refiled within the time allowed by State law. The controversy reheated when money sanctions were imposed against Mr. Moore, totaling over $20,000.

The affirmance of the dismissal of the first case with prejudice is noted in Long v. Funeral Directors Service, Inc., 96 S.W.2d 885 (Mo. App. 2002). The second controversy, ending in the affirmance of sanctions, is reported as Long v. Cross Reporting Service, Inc., 103 S.W.3d 249 (Mo. App. 2003).

The Federal Court complaint, which had never been served, was amended in 2004, after the appeals in Missouri were unsuccessful, to reflect alleged constitutional violations by Missouri judges as well as a conspiracy to violate constitutional rights, allegedly participated in by the judges, the Long family and their attorneys as well as others. Mr. Moore is now a pro se plaintiff as well as attorney for the Long family. He seeks relief from the sanctions, alleging an excessive fine, cruel and unusual punishment and other constitutional violations.

The motion now under consideration is based on a theory that, under the Rooker-Feldman doctrine, I have no jurisdiction to serve, in effect, as an appellate judge for the Missouri cases. It is also contended that if jurisdiction exists, the current claims are barred by the doctrine of res judicata. In the plaintiffs' response, which simply consists of argument, they note that the non-jurisdictional

_____

[1]In a current filing Mr. Moore asserts justifiable confusion about the trial timing before a new judge. The issue went to the Missouri appellate court and was resolved without a published opinion.

Case 4:01-cv-01111-HFS   Document 131   Filed 03/26/08   Page 2 of 6

defense may be characterized as "res judicata and/or collateral estoppel." Doc. 117, pp. 6-7. Plaintiffs further refer to authorities cited in Docs. 63 and 78, tendered in 2004. Those briefs have been considered. Summary judgment in this case was granted in favor of the judicial defendants last month. Doc. 122.[2]

Basic uncontested facts are established by the Long family and their attorneys in their motion.

## ROOKER-FELDMAN

The Rooker-Feldman doctrine is adequately discussed in briefing. The parties join issue on whether plaintiffs' allegation of a conspiracy to deprive them of their rights as an advocate and as family members with privacy interests saves this case from my general lack of jurisdiction to reconsider State Court rulings. Plaintiffs essentially rely on Judge Posner's approach in Nesses v. Shepard, 68 F.3d 1003 (7th Cir. 1995). As more recently described by the author, Nesses holds that a claim that a defendant, as a State Court litigant, "'so far succeeded in corrupting the state judicial process as to obtain a favorable judgment' is not barred by the Rooker-Feldman doctrine." Loubser v. Thacker, 440 F.3d 439, 441 (7th Cir. 2006). The Nesses case was based on a theory of counsel's political influence with the judge. Loubser simply alleged that some forty individuals with various roles in litigation had conspired together with the judge in a divorce case to deprive that plaintiff of her property rights. Loubser is pleaded rather like the case at bar.[3]

---

[2]In their current motion for summary judgment on the merits plaintiffs continue to beat the dead horse of judicial liability, which is subject to revival by the Court of Appeals.

[3]If this case were to survive the jurisdictional challenge, I note that the allegations seem more deficient than those in Nesses. The amended complaint here spells out no theory of undue influence over the judges. The dissenting judge in Loubser observed that that plaintiff's allegations "do not assert the existence of an agreement or understanding as between each of the individual private citizen defendants and a state actor. Instead, Loubser has pleaded a jumbled collection of alleged misdeeds . . . during the state court divorce proceedings together with a

3

The dissenter in <u>Loubser</u>, as a judge of the Seventh Circuit, was bound by <u>Nesses</u>, but was troubled that it "could come to consume the Rooker-Feldman rule."  440 F.3d at 444.  Judge Fairchild, who was on the <u>Nesses</u> panel, also disagreed with the Posner handling of the issue, and concluded that "the Rooker-Feldman doctrine requires dismissal for a lack of jurisdiction."  68 F.3d at 1005.  The <u>Nesses</u> exception to Rooker-Feldman has been unmentioned by judges in other Circuits, and I believe the Eighth Circuit would apply Rooker-Feldman rather than <u>Nesses</u> here. Plaintiffs are seeking slightly disguised district court reconsideration of Missouri judicial rulings.  I do not have that authority.  <u>See, e.g.</u>, <u>Prince v. Ark. Bd. of Examiners in Psychology</u>, 380 F.3d 337 (8th Cir. 2004); <u>Gisslen v. City of Crystal, Minn.</u>, 345 F.3d 624 (8th Cir. 2003); <u>Ballinger v. Culotta</u>, 322 F.3d 546 (8th Cir. 2003).

## RES JUDICATA/COLLATERAL ESTOPPEL

Plaintiffs have had more than their share of days in court.  The first case was dismissed with prejudice on procedural grounds, but that is consistent with Missouri law, and I doubt I would have authority to reach alleged constitutional questions in the original controversy that I could not reach on habeas corpus, where there has been a procedural default.  Litigants should not acquire a new set

---

generalized allegation of conspiracy.  This is insufficient to state a § 1983 claim against the private citizen defendants."  440 F.3d at 446.  The dissenter would have dismissed the complaint with prejudice because plaintiff had sufficient opportunity to soundly plead a conspiracy.  Judge Posner agreed that the complaint could have been dismissed, but would allow a pro se plaintiff another opportunity.  I suppose the complaint here could and should be dismissed under the approach of the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007). Giving plaintiffs the benefit of the doubt here, it is hard to imagine how the funeral home people may have gained some undue influence over all the Missouri judges who are criticized.  I suppose plaintiffs would urge that successful advocacy which they contend was unsound makes the judges and the defendant lawyers somehow "in cahoots."  Recognizing such a general theory would create new and undefinable uncertainties for the entire judicial and legal system.  If sanctions are "chilling," as Mr. Moore claims, this contention would create an earthquake.

4

of judges simply by failing to attend a trial scheduled before another judge.

In Nesses itself, Judge Posner ruled that the allegedly corrupted judicial defendants were properly dismissed (contrary to what plaintiffs fervently seek in their current motion for summary judgment on the merits) and also held that the doctrine of res judicata foreclosed a claim alleging corruption of the tribunal. That claim was fully presented, or could have been presented, in the proceedings plaintiffs pursued in State Court. 68 F.3d at 1005-6.[4]

For the reasons stated, and for additional reasons briefed by defendants, the summary judgment motion (Doc. 112) shall be GRANTED and judgment entered in favor of defendants Funeral Directors Service, Inc., Franke & Schultz, P.C. and Cari Franke Walsh. SO ORDERED.


                                    /s/ Howard F. Sachs
                                    HOWARD F. SACHS
                                    UNITED STATES DISTRICT JUDGE

March 26, 2008

Kansas City, Missouri

---

[4]It may be useful to suggest my skepticism about the main "constitutional" issues plaintiffs seek to advance. Disclosure of medical records, however offensive, unjustifiable, and contrary to statutes, seems to be subject to protection at levels short of the Fourteenth Amendment. Claims of judicial error do not transmogrify into constitutional violations. The imposition of sanctions for lawyer misconduct has no novelty. If deemed penal in nature, as Mr. Moore asserts, it may be subject to the limitation that it cannot be challenged unless and until invalidated in the Missouri system. Heck v. Humphrey, 512 U.S. 477 (1994).

5

6